No. 40,062

LAWRENCE CAMERA SHOP, INC., a Corporation, and ROBERT E. GASKINS, *Appellants*, v. HENRY W. LAWRENCE and MILDRED Y. LAWRENCE, *Appellees*.

(296 P. 2d 1059)

Opinion filed May 5, 1956.

*Glenn J. Shanahan*, of Wichita, argued the cause, and *Dale M. Bryant, Morris H. Cundiff, Garner E. Shriver* and *Orlin L. Wagner*, all of Wichita, were with him on the briefs for the appellants.

*George B. Powers*, of Wichita, argued the cause, and *Samuel E. Bartlett, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, W. E. Holmes, Donald I. Mitchell* and *Richard W. Holmes*, all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This case arises out of a dispute over the terms and provisions of a written lease covering a business property in Wichita.

Defendants Lawrence were and are the owners of the property, and on August 1, 1950, leased the same to plaintiffs for a term of

five years at a monthly rental of $600. Paragraph 4 of the lease in substance provided that if on or before February 1, 1955, plaintiff lessees notified defendant owners in writing that they desired to extend the lease for an additional five years, at a rental to be then agreed upon, defendants would enter into negotiations with plaintiffs and give them "prior right" to a lease for such additional period. Paragraph 12 of the lease provided that plaintiffs were not to sublease without the written consent of defendants.

On January 29, 1955, plaintiff Gaskins wrote to defendants and advised them that plaintiffs desired to take advantage of the "five-year option" contained in the lease. On February 15, 1955, defendants notified plaintiffs to the effect that the lease gave plaintiffs no such "option"; that they, defendants, expected to occupy the premises themselves upon the expiration of the lease, and called attention to the fact that plaintiffs had violated the provision of the lease which prohibited a sublease without defendants' written consent.

As a result of this difference of opinion concerning the rights of the parties, plaintiffs, on April 6, 1955, filed this action for a declaratory judgment to construe the terms of the lease, and particularly the fourth paragraph thereof which plaintiffs claim gave them an absolute right to exercise the option to extend the lease for an additional five-year period.

Defendants' answer in substance alleged that the provision in question amounted merely to a right of "first refusal," exercisable by plaintiffs only in the event defendants desired to extend the lease. By cross petition defendants sought cancellation of the lease because of plaintiffs' alleged violation of the restriction against subleasing.

Upon the issues thus joined the parties proceeded to trial, and after hearing considerable evidence the court, on June 1, 1955, entered judgment in defendants' favor cancelling the lease for violation of the restriction against subleasing, but stayed execution of the judgment until August 1, 1955, that being the expiration date of the lease. In addition, the court held that under paragraph 4 of the lease plaintiffs did not have an absolute and unconditional right to a renewal and that the provision in question merely gave them a "prior right to a lease" in the event defendant owners desired to extend the lease. The journal entry of judgment contains a specific finding to the effect that plaintiffs had, without the knowl-

edge, approval or written consent of defendants, and in violation of paragraph 12 of the lease, sublet a portion of the premises in question to one Titus, doing business as "Dealers Service Craftsmen," and that the relationship between them was that of landlord and tenant.

Plaintiffs have appealed and specify as error all adverse rulings of the court below.

Actually there are only two questions in the case. The first is whether plaintiffs violated the provision of the lease which prohibited their subleasing a portion of the premises without the written consent of defendant owners. If they did, that is, if the relationship between them and Titus amounted to that of landlord and tenant, then of course defendants were entitled to cancellation of the lease regardless of the other mentioned provision contained therein.

On the other hand, if plaintiffs did not sublease a portion of the premises to Titus, and if he occupied the status of a "licensee" only, as contended by plaintiffs, then it becomes necessary to decide the question whether plaintiffs, under paragraph 4 of the lease, had an absolute right to exercise their option to renew the lease for an additional five-year period.

We therefore proceed to a discussion of the first proposition, that is, whether plaintiffs violated the lease by subletting to Titus.

The premises in question consist of the ground floor of a building and a large basement beneath it. Plaintiffs' shop was on the ground floor, and a portion of the basement was used as a camera repair department. Plaintiffs made arrangements with Titus, a repairman, to "take over" that portion of the premises used as the repair department. The arrangement was quite "informal" and was not evidenced by any writing. While it is true that the evidence concerning this business relationship may not be said to have been in dispute, yet the ultimate question before the court was one of fact, that is, did the relationship of landlord and tenant exist? No useful purpose would be served by detailing all of the evidence bearing on the question, for in a fact case such as this an appellate court is concerned only with evidence which supports a finding, and not with that tending to establish a different conclusion. With this in mind, we mention but a few of the undisputed facts which support the finding of the trial court:

Titus hired and paid his own employees, kept his own set of books, and had a separate listing in the telephone book under the name of "Dealers Service Craftsmen." Plaintiffs charged him for services rendered, he charged them for services he rendered, and they "balanced off" at the end of each month. He performed work for others with plaintiffs' full knowledge and approval, and plaintiffs did not pay him any salary or wage. He retained all income from outside sources. He purchased supplies and repair equipment from plaintiffs in the amount of $3,000 on a payment plan. Plaintiffs did not withhold or deduct social security or income tax from him, although they did withhold from all employees. He operated under the trade name of "Dealers Service Craftsmen," and circulated price lists to the industry under that name. Plaintiffs at no time received written consent from defendants to sublease.

Although it is vigorously contended by plaintiffs that all of the evidence, taken together, established a relationship of licensor and licensee rather than that of landlord and tenant, we are of the opinion the trial court's finding that the relationship was one of landlord and tenant is amply supported by the facts and circumstances above related. Such being the case, it is not, under the well-established rule, to be disturbed by this court on appeal.

Plaintiffs, having subleased a portion of the premises without the written consent of defendants, violated an express provision of the lease, and cancellation thereof was properly adjudged.

In view of this conclusion it becomes unnecessary to discuss the respective rights of the parties under paragraph 4 of the lease.

We find no error in the record and the judgment is affirmed.